UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT L. ELLIS,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>J. JOHNSON (CC1), T. LANSFORD (CC2), D. FOSTON (TLP Exm.),<br><br>　　　　Defendants. | NO. CV 17-3357-JFW (AGR)<br><br>ORDER DISMISSING FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND |

**I.**

**PROCEDURAL BACKGROUND**

On May 3, 2017, Plaintiff, a prisoner proceeding *pro se* and *in forma pauperis*, filed a civil rights complaint. (Dkt. No. 1.) Pursuant to the Prison Litigation Reform Act, the Court screened the complaint to determine whether it failed to state a claim on which relief may be granted. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c)(1). On May 22, 2017, the Court dismissed the complaint with leave to amend. (Dkt. No. 6.) On July 3, 2017, Plaintiff filed the First Amended Complaint ("FAC"). (Dkt. No. 7.)

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citations omitted).

A pro se complaint is to be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Before dismissing a pro se civil rights complaint for failure to state a claim, the plaintiff should be given a statement of the complaint's deficiencies and an opportunity to cure them unless it is clear the deficiencies cannot be cured by amendment. *Eldridge v. Block*, 832 F.2d 1132, 1135-36 (9th Cir. 1987).

## II.
## **ALLEGATIONS IN THE FIRST AMENDED COMPLAINT**

Plaintiff is housed in the California Men's Colony ("CMC"). He challenges his classification with an R suffix. The named Defendants, sued solely in their official capacity, are (1) J. Johnson, Correctional Counselor I, who declined to remove the R suffix in September 2016; (2) T. Lansford, Correctional Counselor II, who was involved in Plaintiff's second-level appeal; and (3) D. Foston, an Appeals Examiner who denied Plaintiff's final appeal. (FAC at 13.[1])

### A. Factual Background of Plaintiff's "R Suffix" Classification

On June 9, 2016, after a hearing, California State Prison–Los Angeles County affixed an "R suffix," which applies to an inmate who has a history of sex offenses within the meaning of 15 Cal. Code Regs. § 3377.1(b). (FAC at 2.) Regulations permit classification with an R suffix based on consideration of

---

[1] Page citations are to the page numbers assigned by the CM/ECF system in the header.

arrest reports and district attorney's comments related to each arrest. 15 Cal. Code Regs. § 3377.1(b)(3) (requiring "inmates with records of arrest, detention, or charge of any offenses listed in PC Section 290" to "appear before a classification committee to determine the need to affix an 'R' suffix to the inmate's custody designation" and requiring committee to "consider the arrest reports and district attorney's comments related to each arrest"); *Id.* § 3377.1(b)(5) ("classification committee may affix an 'R' suffix if the arrest report(s) are available and the district attorney's comments are unavailable").

The FAC cites Exhibit 2. (FAC at 2.) Plaintiff previously attached the Classification Committee Chrono dated June 2016, which was attached as Exhibit C to the initial complaint. (Compl. at 20-22.) The committee reviewed Plaintiff's arrest reports and the district attorney's comments for each of two arrests. The committee addressed Plaintiff's January 19, 2012 arrest for rape by force or fear in violation of Cal. Penal Code § 261(a)(2). The committee noted that, according to the arrest report, the arresting officer responded to a call and met two victims. Janisse said "she was assaulted, threatened and raped by 'Poncho' (later identified as S/Ellis) and forced to have sexual intercourse with a female black (later identified as V/2 Houston). She additionally stated the Suspect videotaped the entire encounter with his cell phone. She also witnessed the Suspect rape and sodomize V/2 Houston." (*Id.* at 20-21.) The officer viewed part of the video on Plaintiff's phone. (*Id.* at 21.) Houston said Plaintiff had sodomized her against her will and choked her. The officer saw injuries to her back and neck. Houston said she was afraid Plaintiff would hurt her if she spoke to police and did not want to press charges. "She was terrified and shaking while she spoke to me." The officer arrested Plaintiff. (*Id.*) The "DA declined to prosecute on 1/23/12." (*Id.* at 20.)

On April 26, 2011, Plaintiff was arrested for attempted rape, rape and sexual battery. Officers met a female victim, McDonald, who said she had run

3

away from home five days earlier and was staying with her friend, "Dakota." On April 26, 2011, while McDonald was "sleeping in the rear garage by herself, two male blacks whom V/McDonald knew by monikers 'Poncho' (S/Ellis[)] and 'Judge' [(]S/Rivers) entered . . ., locked the door and woke V/McDonald from her sleep." (*Id.* at 21.) The two men tried to coerce her into having sex with them. She repeatedly refused and pleaded with them to stop touching her. Plaintiff finally demanded, "Are you going to let me hit that?" McDonald refused. Plaintiff punched her twice in the head and told her, "You need to go stand on the street corner, I'm going to make you my bitch." McDonald believed Plaintiff was a pimp and "was ordering her to work on the street as a prostitute." After McDonald identified Plaintiff and Rivers, they were arrested. (*Id.*) The charges (in case number TA117808) were dismissed on July 6, 2011. (*Id.* at 20) "[T]he DA declined to prosecute this case." (*Id.* at 21.)

"Based on the totality of the available information and the [regulatory] guidelines," the Committee found that Plaintiff warranted an R suffix and referred the matter "to the CSR [Classification Staff Representative] for that purpose." (*Id.*) The R suffix was affixed by the CSR on August 16, 2016. (*Id.* at 14.)

### B. Plaintiff's Classification at CMC

Plaintiff was subsequently transferred to CMC. The FAC complains that Plaintiff's efforts at CMC to get the R suffix removed were denied.

#### 1. Defendant J. Johnson

On September 13, 2016, Plaintiff appeared for an initial review of his classification before the Unit Classification Committee. The Correctional Counselor was defendant J. Johnson. Plaintiff requested that Johnson "remove the 'R' suffix." (FAC at 2.)

Plaintiff argues that Johnson acted with deliberate indifference in failing to follow the standards in 15 Cal. Code Regs. § 3377.1(b) and that the prosecutors' decisions not to prosecute him for the sex offenses are the equivalent of "the

4

DA's office finding plaintiff not guilty of the two charges in question." (*Id.* at 15.) The FAC also alleges Johnson acted with deliberate indifference to the known substantial risk of serious harm that inmates with an R suffix face. (*Id.* at 4-5.)

### 2. Defendant T. Lansford

Plaintiff filed a formal Inmate Appeal (CDCR Form 602) on October 13, 2016. (*Id.* at 5.) Plaintiff alleges Lansford unfairly denied the second-level appeal and failed to consider the standards in 15 Cal. Code Regs. § 3377.1(b). (*Id.* at 5-6.) As with Johnson, Plaintiff alleges that Lansford "has [the] common knowledge" that an R suffix carries with it a "substantial risk" of being attacked by other inmates. (*Id.* at 6.)

### 3. Defendant D. Foston

Petitioner filed his third and final level appeal on December 19, 2016. (*Id.* at 7.) Plaintiff alleges defendant D. Foston improperly denied the appeal and failed to apply the standards in 15 Cal. Code Regs. § 3377.1(b). (*Id.*) As with the other two defendants, Plaintiff alleges Foston acted with deliberate indifference to the known danger of attack on inmates with a R suffix. (*Id.* at 8.)

## C. Claims In The FAC[2]

Plaintiff asserts that the Defendants violated his (1) Fourteenth Amendment right to procedural due process; (2) Eighth Amendment right against cruel and unusual punishment; and (3) Fifth Amendment rights (a) not to be falsely labeled as sex offender and (b) not to be placed at substantial risk of attack by other inmates due to the R suffix. (*Id.* at 15; *see also id.* at 16-21.)

Plaintiff requests an order requiring removal of the R suffix and an injunction preventing any future R suffix classification based on the two underlying arrests. He does not seek any other relief. (*Id.* at 22.)

---

[2] Plaintiff has grouped all of his claims and counts under the single heading of "Claim I" on the form civil rights complaint.

5

**III.**

**DISCUSSION**

**A.  Procedural Due Process**

As the Court's prior screening order noted, the protections of procedural due process adhere when a prison official's disciplinary action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)).

**1.  No Liberty Interest in a Prison's Grievance Procedures**

Plaintiff has no constitutionally protected interest in the prison's grievance system.  *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure."); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("Inmates lack a separate constitutional entitlement to a specific prison grievance procedure.").  For this reason, he cannot assert a due process claim based solely on the handling of his grievances.  *See McRoy v. Roe*, 509 Fed. Appx. 660, 660 (9th Cir. 2013) (affirming dismissal of claims arising from defendants' processing of grievances).

Accordingly, in the FAC, Plaintiff again fails to state a due process claim against Defendants Lansford and Foston, who are sued for wrongful denial of his second and third level administrative appeals.

**2.  No Liberty Interest In Family Visitation**

Plaintiff argues that his R suffix renders him ineligible for family visits under 15 Cal. Code Regs. § 3177(b)(1)(A).

Under *Sandin*, as the Court previously explained, Plaintiff lacks either a constitutionally-derived[3] or state-created liberty interest in the state's family

---

[3]  Protected liberty interests "may arise from two sources – the Due Process Clause itself and the laws of the States."  *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) (citation omitted) (noting it cannot "seriously

6

visitation program because participation in the program is not an "ordinary incident of prison life." *Cooper v. Garcia*, 55 F. Supp. 2d 1090, 1098 (S.D. Cal. 1999). The pertinent regulation states that "[f]amily visiting is a privilege" and is subject to various limitations. *E.g.,* 15 Cal. Code Regs. § 3177(b)(1)-(2). California's family visitation regulations do not create a liberty interest for inmates. *See Jones v. Nichols*, 639 Fed. Appx. 433, 434 (9th Cir. 2016); *Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2002) (finding no constitutional right to contact visits or conjugal visits); *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) ("dismissal of [] due process claim was proper because the state regulations permitting correctional facilities to allow conjugal visits to prisoners did not give [plaintiff] a liberty interest in such visits.").

In the FAC, Plaintiff again has not alleged facts sufficient to state a due process claim based on his ineligibility for family visits.

### 3. No Liberty Interest As To R Suffix Classification

As the prior screening order noted, an inmate does not generally have a liberty interest in a particular classification. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). In *Neal v. Shimoda*, 131 F.3d 818, 829 (9th Cir. 1997), the Ninth Circuit held that Hawaii's classification of an inmate as a sex offender implicated a protected liberty interest when such a classification mandated the inmate's participation in the state's Sex Offender Treatment Program ("SOTP"):

> The liberty interest implicated by the establishment of the SOTP is not merely the requirement that sex offenders complete the specified treatment program. *If that were all that was at stake, we could probably not say that a liberty interest has been created*, given the fact that prisoners frequently maintain treatment and

---

be contended . . . that an inmate's interest in unfettered visitation is guaranteed directly by the Due Process Clause," but noting that state law may create enforceable liberty interests).

7

> behavioral modification programs (such as anger management or
> alcohol abuse classes ) that have long withstood legal challenge.
> . . . [T]he stigmatizing consequences of the attachment of the "sex
> offender" label *coupled with* the subjection of the targeted inmate to
> a mandatory treatment program whose successful completion is a
> precondition for parole eligibility create the kind of deprivations of
> liberty that require procedural protections.

*Id*. at 830 (emphasis added). Stigma alone is insufficient to implicate a liberty interest. *Am. Civil Liberties Union v. Masto*, 670 F.3d 1046, 1058 (9th Cir. 2012) ("While stigma alone is inadequate to affect a liberty interest, stigma plus an alteration in legal status can encroach on a cognizable liberty interest.").

Plaintiff does not allege in the FAC that the R suffix classification subjects him to mandatory treatment that affects parole or another liberty interest. *See Hogg v. Cox*, 656 Fed. Appx. 374 (9th Cir. 2016) (affirming dismissal when plaintiff failed to allege facts sufficient to show classification implicated liberty interest or that he was denied due process prior to classification); *Cooper*, 55 F. Supp. 2d at 1101-02 (analyzing *Neal* and dismissing inmate's due process challenge to his R suffix classification); *see also Barno v. Ryan*, 399 Fed. Appx. 272, 273 (9th Cir. 2010) (distinguishing *Neal* and affirming dismissal of inmate's due process challenge to classification); *Thomas v. Davey*, 2017 U.S. Dist. LEXIS 96719, *12-*13 (E.D. Cal. June 21, 2017) (finding no liberty interest with respect to R suffix).

Accordingly, Plaintiff again fails to state a due process claim based on his R suffix classification. Even assuming that imposition of a R suffix could create a liberty interest, Plaintiff fails to allege any violation of procedural due process at his hearing. An inmate is entitled to (1) written notice of the charges or allegations to be considered; (2) a period of no less than 24 hours to prepare for the hearing; (3) a written statement by the fact finder regarding the evidence and

reasons for the finding; and (4) an opportunity to seek assistance if the inmate is illiterate or the issues are complex. *Wolff v. McDonnell*, 418 U.S. 539, 563-71 (1974); *Petillo v. Kearnan*, 2017 U.S. Dist. LEXIS 64245, *7 (Apr. 26, 2017) (dismissing procedural due process claim when plaintiff failed to plead violations of *Wolff* procedures). Plaintiff alleges only that the Classification Committee did not remove his R suffix based on his prior arrests. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (requiring some evidence to support decision); *DeLong v. Terhune*, 18 Fed. Appx. 534, 535 (9th Cir. 2001) (and finding R suffix supported by prior arrest for rape under 15 Cal. Code Regs. § 3377.1(b)); *Crumb v. Meadors*, 2016 U.S. Dist. LEXIS 177651, *15-*17 (C.D. Cal. Dec. 22, 2016) (dismissing complaint and finding prior arrest for sex offense provides some evidence supporting R suffix under § 3377.1(b)). Plaintiff's argument that his two arrests are insufficient under § 3377.1(b) is without merit.

**B.     Cruel And Unusual Punishment**

The Court previously explained that, although prison officials have a duty to provide humane conditions of confinement, including ensuring that inmates receive adequate food, clothing, shelter and medical care, *see Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994), the Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). To state an Eighth Amendment claim based on conditions of confinement, Plaintiff must allege "deliberate indifference to inmate health or safety" that resulted in his being denied the "minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (citations and quotations omitted); *see Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.") (citation and internal quotation omitted).

### 1. Suspension Of Family Visitation

In *Toussaint v. McCarthy*, 801 F.2d 1080, 1113 (9th Cir. 1986), *abrogated in part on other grounds by Sandin*, 515 U.S. 472, the Ninth Circuit rejected a claim that a prison's denial of family visitation privileges to inmates in administrative segregation constituted cruel and unusual punishment. "To the extent that denial of contact visitation is restrictive and even harsh, it is part of the penalty that criminals pay for their offenses against society." *Id.* (citing *Rhodes*, 452 U.S. at 347); *see also Gerber*, 291 F.3d at 621 ("prisoners have no constitutional right while incarcerated to contact visits or conjugal visits"). As the Eastern District of California recently explained in rejecting a similar claim regarding the right to family visitation:

> [T]his same argument was considered and rejected by the Ninth Circuit in *Toussaint*. *See Toussaint*, 801 F.2d at [1]113 (concluding, despite plaintiffs' contentions that contact visitation has beneficial rehabilitative effects, is vital to inmate health, and affects both physical and mental health, that denial of contact visitation does not amount to the infliction of pain for purposes of the Eighth Amendment). As plaintiff cites no authority for the proposition that denial of contact visits constitutes cruel and unusual punishment, and binding precedent in this circuit holds to the contrary, plaintiff's Eighth Amendment claim must be dismissed.

*Johnson v. Arnolds*, 2016 WL 8730768, *4 (E.D. Cal. Sept. 30, 2016); *see also Overton v. Bazzetta*, 539 U.S. 126, 132-36 (2003) (upholding visitation restrictions).

Plaintiff has not alleged sufficient facts to state an Eighth Amendment claim based on the denial of family visitation.

## 2. Failure To Protect From Risk Of Attack By Other Inmates

In screening the initial complaint, the Court stated:

> To state an Eighth Amendment failure to protect claim, Plaintiff must allege facts sufficient to show that (1) he was subject to conditions posing a substantial risk of serious harm to his health or safety; and (2) prison officials were deliberate indifferent to those risks. *Farmer*, 511 U.S. at 837. Plaintiff must allege that each defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and drew that inference. *Id.* The complaint does not allege deliberate indifference to a substantial risk of serious harm due to the R suffix. *Petillo*, 2017 U.S. Dist. LEXIS 64245, *8-*9 (S.D. Cal. Apr. 26, 2017); *see, e.g.*, *Thomas v. Sheppard-Brooks*, 2011 WL 3917943 (E.D. Cal. 2011) (analyzing R suffix inmate's claim of failure to protect from attack by other inmates).

(Dkt. No. 6 at 10.)

Plaintiff alleges all three defendants were aware that inmates with an R suffix "have often, in the past, and current affairs [sic], been assaulted leading to serious injury, by other prison inmates." (FAC at 4-7.) Plaintiff does not allege that he has been attacked or threatened with attack. Plaintiff does not allege that other inmates know of Plaintiff's R suffix classification and that Defendants are aware of that knowledge. Plaintiff alleges he has difficulty sleeping, eating and attending to unspecified "work related obligations due to" his "looking over [his] shoulder, anticipating being attacked, due to the discovery of [the] 'R' suffix." (*Id.* at 5.)

These allegations in the FAC are insufficient to state a failure to protect claim. In *Crumb*, the plaintiff alleged that, although prison staff assured him that his R suffix was confidential, other inmates found out and threatened to stab him

if he did not "make a hit" for them and agree to hide their illicit knives. Crumb alleged that when he alerted prison officials about the threat, they successively (1) put him in administrative segregation for his safety; (2) transferred him to the "Sensitive Needs Yard" for the same reason; and (3) transferred him to another prison (although he was later attacked there by other inmates who learned of his R suffix). 2016 U.S. Dist. LEXIS 177651, at *2. He sued members of the Institutional Classification Committee ("ICC") for their repeated refusals to remove the baseless R suffix. The court found that Crumb failed to state a failure-to-protect claim:

> Crumb has failed to plead a Section 1983 claim premised on an Eighth Amendment violation because he fails to demonstrate the requisite mindset and proximate causation. Assuming the R-suffix was the reason that Crumb was attacked, Crumb fails to show any culpable state of mind on behalf of the ICC members. More importantly, it is not clear how their assessment – which is supposed to be kept unknown to other prisoners – could be the reason for an attack by inmates at a different prison absent intervening misconduct. Perhaps the officers would be culpable if they (with the requisite mental state) leaked the information to prisoners, expecting them to attack Crumb. But those facts are nowhere near what the FAC alleges. Nor does the FAC allege that the ICC members were confronted with a specific threat to Crumb that went unaddressed. Quite the opposite: it appears that, in response to threats related to the R-suffix, some of the same prison officials Crumb sues (1) put Crumb in administrative segregation for his own protection, and (2) moved him to the sensitive duty yard, where he remained without further incident (until his transfer to a different prison). [Citation.] The FAC essentially seeks to hold the

12

> ICC members liable for any action taken by anyone, anywhere, because of someone else's disclosure of Crumb's R-suffix designation. This is improper, and does not give rise to an Eighth Amendment violation.

*Id.* at *7; *Petillo*, 2017 U.S. Dist. LEXIS 64245, *8-*9 (finding plaintiff with R suffix failed to allege sufficient facts to show deliberate indifference).

Plaintiff's allegations are far weaker than the allegations found insufficient in *Crumb* to allege deliberate indifference. Plaintiff complains that Defendants failed to remove the R suffix. Plaintiff does not allege that Defendants were aware of any substantial risk of attack on Plaintiff and failed to protect him. *See Crumb*, 2016 U.S. Dist. LEXIS 177651, at *19-*20.

### C. Violation Of State Prison Regulations

Plaintiff argues that Defendants violated prison regulations governing R suffixes: 15 Cal. Code Regs. § 3177(b)(1)(A) (family visitation) and § 3377.1(b)(9) (R suffix shall not be applied "if the inmate was acquitted/found not guilty of the sex related charges in a court of law"). Plaintiff does not allege how these regulations were violated in his case. *See Kaulick v. Martinez*, 540 Fed. Appx. 797, 797 (9th Cir. 2013). Plaintiff did not allege that he was tried or acquitted of any sex offense.

As the Court advised him in its prior screening order, Plaintiff cannot assert an independent cause of action based on alleged violations of the California Code of Regulations. *Davis v. Powell*, 901 F. Supp. 2d 1196, 1211 (S.D. Cal. 2011). "The existence of regulations such as these governing the conduct of prison employees does not necessarily entitle Plaintiff to sue civilly to enforce the regulations . . . ." *Id.* (citation omitted).

### D. Leave To Amend

Plaintiff has failed to cure the deficiencies in his complaint despite being given an opportunity to amend. The FAC will be dismissed without leave to

13

amend. *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) (when district court has already afforded plaintiff opportunity to amend complaint, court has wide discretion to deny leave to amend).

IV.

**ORDER**

For the reasons discussed above, the Court DISMISSES the FAC without leave to amend and directs that Judgment be entered dismissing the action with prejudice.

IT IS SO ORDERED.

DATED: July 13, 2017

                                            JOHN F. WALTER
                                            United States District Judge